UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

In Re                                              :
                                                   :        Case No. 09-10146
RIVER WEST, L.P.                                   :        Chapter 11
D/B/A RIVER WEST MEDICAL CENTER                    :
    *Debtor*                           :

## OBJECTION OF THE UNITED STATES TO THE CONFIRMATION OF THE LIQUIDATING PLAN

**NOW INTO COURT**, comes the United States of America on behalf of the U.S. Department of the Treasury, Internal Revenue Service, (hereinafter "United States"), which objects to the debtor's Chapter 11 plan of liquidation for the reasons explained below.

The United States is a priority creditor of the debtor in the amount of $1,692,039.08 for unpaid federal employment taxes from the second quarter of 2008 through the petition date, February 6, 2009. The United States also holds an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(B) & (D) for unpaid post-petition employment taxes in the amount of $486,916.20. The United States also has asserted a secured claim herein in the amount of $872,216.11 by virtue of a Notice of Federal Tax Lien filed in Iberville Parish on November 18, 2008. An adversary proceeding is currently pending to *inter alia* determine the validity and priority of the tax lien. To the extent that the lien is valid, it attaches to all of the debtor's property and rights to property, whether existing at the time the notice of lien was filed or acquired thereafter, including the debtor's rights in its accounts receivable and its insurance contract rights. 26 U.S.C. § 6321. *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108 (1945); *United States v. McDermott*, 507 U.S. 447, 113 S.Ct. 1526 (1993). Other creditors have also asserted security interests in the debtor's accounts receivables. Pursuant

to 26 U.S.C. § 6323(d), the tax lien primes all previously perfected security instruments in accounts receivables created by the debtor 45 days after the date of the filing of the notice of federal tax lien.

The United States objects to the confirmation of the debtor's liquidating plan because of the vagueness and potential interpretation of the plan's definition of "Unsecured Claim" on page 6 thereof.  Unsecured claims are defined under the plan to include " deficiencies on Secured Claims" and are relegated to Class 7 treatment under section 4.7 of the plan.  The plan, however, does not explain what is meant by a deficiency on a secured claim.  The United States objects to the definition because it is subject to being interpreted to mean that the portion by which the amount of an asserted secured claim exceeds the value of the collateral it encumbers within the estate will be treated as an "Unsecured Claim", and relegated to Class 7 treatment, without any regard as to whether the claim would otherwise qualify as a priority claim under § 507(a) of the Bankruptcy Code.

The United States' secured claim is for employment taxes for which returns were due after three years prior to the bankruptcy petition date.   Such a claim, if not entitled to be recognized as secured due to a deficiency in the value of the collateral included within the estate, is entitled to be recognized as a priority tax claim under §507(a)(8)(D).  As such, the claim is entitled to Class 1 treatment under section 4.1 of the liquidating plan.  The United States objects to the definition of "Unsecured Claim" and any other provision of the plan which could be construed to require a different result.

The United States further objects to the confirmation of the debtor's liquidating plan because it calls for the payment of §507(a)(2) administrative expenses, including §503(b) expenses, in preference to the claims of secured creditors. See plan, sec. 2.3. Both the United States and Westside Physicians, LLC ("Westside") have asserted claims secured by liens on virtually all of the debtor's assets. While the debtor has challenged the validity of those liens through a pending adversary proceeding, the plan provides treatment of the United States' and Westside's claims as class 6 and class 4 claims, respectively to the extent they are ultimately deemed secured. The effect of section 2.3 of the plan, that "Administrative Expense Claims ... shall be paid prior to any payment on claims to creditors in any other class", will be that the allowed administrative expenses will be paid out of the proceeds of the Government's and/or Westside's collateral to the prejudice of those secured creditors unless the estate is sufficiently solvent to fully pay both the allowed administrative expenses and the allowed secured claims.

The secured claims of the United States and Westside total $3,294,769.44 as per the filed proof of claims. Additional creditors have filed additional claims asserting secured interests in the debtors accounts receivables. The disclosure statements filed in this case make clear that the estate is comprised entirely of assets with highly speculative value. Those assets are: (1) the accounts receivable, the value and collectibility of which is unverified and ever-decreasing due to the lack of collection efforts; (2) a business interruption insurance claim for an entity which had started to have positive cash flow only

recently before the insurable event occurred[1]; and (3) an alleged $500,000 breach of contract claim.  In light of the highly speculative value of the assets of the estate, it appears unlikely that sufficient funds will ultimately be obtained to pay all of the administrative expenses entitled to section 507(a)(2) priority and satisfy the claims of the secured creditors holding mortgages or liens on the sources of funds coming into the estate.  Since sec. 2.3 requires the payment of all administrative claims prior to payment of the secured creditors, the administrative claims will likely be paid out of the secured creditors' collateral to the secured creditors' detriment.

Such a payment scheme is clearly contrary to established precedent.  *In re Grimland, Inc.*, 243 F3d 228, 233 (5th Cir. 2001) ("The default rule in bankruptcy is, accordingly, that administrative expenses are paid out of the estate and not by the secured creditors of the debtor".); *In re Darnell,* 834 F.2d 1263, 1265 (6th Cir. 1987) ("[A]s a general rule, if a lien is perfected, it must be satisfied out of the asset(s) it encumbers before any proceeds of the asset(s) are available to unsecured claimants, including those having priority (such as holders of administrative claims).  *Collier on Bankruptcy* ¶ 507.02[2] (15th ed. 1985)." (footnote omitted); *In re Flagstaff Foodservice Corp.*, 739 F.2d 73,76 (2nd Cir. 1984) ("Payment of administrative expenses traditionally has been the responsibility of the debtor's estate, not its secured creditors"); *In re A.J. Lane & Co., Inc.* 113 B.R. 821, 824 (Bankr. D. Mass. 1990) ("The claim of a secured creditor to his collateral is of course senior to that of even a first

---

[1] See the third amended disclosure statement (Doc. 537, p. 5.) ("In the summer of 2008, the Debtor began experiencing positive cash flow").

priority claimant such as an attorney rendering services to the estate"). "Although it has been well said that 'professionals should not be expected to finance the administration of liquidation or reorganization cases,' *2 Collier on Bankruptcy* ¶ 331.01, at 331-3(15th ed.1984), 'it does not follow that in the event the estate has no unencumbered funds from which to pay such expenses, the secured creditor becomes obligated to satisfy these obligations.' *In re S & S Indus., Inc., supra,* 30 B.R. at 399". *Flagstaff, supra,* at 77.

Thus, confirmation of the plan should be denied due to the prejudicial effect it will have upon secured creditors by virtue of the preferential treatment provided to holders of administrative expense claims under section 2.3.

The United States further objects to the confirmation of the debtor's liquidating plan because it improperly restricts payment of the United States' secured claim to certain described proceeds from the debtor's accounts receivables. See plan, sec. 4.6. The lien which secures the United States' claim attaches not only debtor's receivables, but also to the debtor's insurance claims and all other assets and interests owned by the debtor. By limiting the United States' recovery on its secured claim to its secured interest in a single asset of highly speculative value, the plan ensures that the United States will not receive the effective date value of its secured claim, in contravention of 11 U.S.C. § 1129(a)(9)(C)(i) & (D).[2]

---

[2] As explained above, the United States' secured claim would otherwise be a priority tax claim under §507(a)(8)(D) since the claim is for employment taxes for which returns were due after three years prior to the bankruptcy petition date. Consequently, sub-paragraph 1129(a)(9)(D) requires that the mandatory payment provisions which apply to priority tax claims, ie. §1129(a)(9)(C), also apply to the payment of the Government's secured claim.

The United States further objects to the confirmation of the debtor's liquidating plan because it conditions any payment of the United States' secured claim upon the issuance of a final order or judgment in the pending adversary proceeding. See plan, sec. 4.6, final sentence. The vast majority of the claims asserted in the amended complaint in the adversary proceeding concern the viability of the claims and secured interests of Westside and/or Iberville Health Services Corporation and do not directly involve the secured interests of the United States. There is no legitimate reason to delay making payment on the United States' secured claim until the Court resolves the myriad of claims and issues raised against those entities in the adversary proceeding. Such a delay violates 11 U.S.C. § 1129(a)(9)(C)(ii) & (D), which requires that the secured claim be paid within five years of the order of relief and that the claim be paid through regular installments.

The United States further objects to the confirmation of the liquidating plan because it impermissibly surcharges the collateral of the creditors holding secured interests in the debtor's insurance claims for the expenses incurred by the liquidating trust in collecting accounts receivables. See plan, sec. 6.2, final sentence. Section 506(c) permits administrative expenses to be charged against a secured creditor's collateral only in limited circumstances - where the expense is for the reasonable and necessary cost of preserving or disposing of the collateral and the creditor benefits from the expense. In order to surcharge a secured creditor's collateral under this "extraordinary exception" the Fifth Circuit requires that the administrative expense be for a "quantifiable and direct benefit to the secured creditor; indirect or speculative benefits may not be surcharged, nor may expenses that benefit the debtor or other creditors". *In re Grimland, Inc.*, supra at 232; *In re P.C. Ltd.*, 929 F.2d 203,

205 (5th Cir. 1991), *In re Delta Towers Ltd.*, 924 F.2d 74, 76-77 (5th Cir. 1991), *reh'g denied,* 1991 U.S.App. LEXIS 4829 (1991). The plan's transfer of the surcharge from the accounts receivable lien creditors to the creditors with liens on the insurance contrat rights will obviously not provide a quantifiable and direct benefit to the later set of creditors. Thus, the final sentence of the carve-out provisions, provided at section 6.2 of the plan, is impermissible under the foregoing authority.

The United States further objects to the plan's provisions, at section 9.1, for the prosecution of objections to claims. There the plan provides that objections to claims will be filed by the liquidating agent but will be litigated, settled, or withdrawn by the debtor. The United States objects to having two parties, rather than one, involved in the process as such poses a likelihood that unnecessary administrative expenses will incurred. The United States suggests that if the liquidating agent is the person responsible for determining which objections are to be brought against which claims, than the liquidating agent should also be vested with the authority to prosecute the objections.

WHEREFORE for the foregoing reasons, the United States of America prays that confirmation of the debtor's plan of liquidation be denied.

        UNITED STATES OF AMERICA, by

        DAVID R. DUGAS
        UNITED STATES ATTORNEY

        /s/ John J. Gaupp
        John J. Gaupp, LBN 14976
        Assistant United States Attorney
        777 Florida Street, Suite 208
        Baton Rouge, Louisiana 70801
        Telephone: (225) 389-0443
        Fax: (225) 389-0685
        E-mail: john.gaupp@usdoj.gov